# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HARMAN INTERNATIONAL INDUSTRIES, INC.,<br><br>    *Plaintiff*,<br> v.<br><br>VOXX INTERNATIONAL CORP. and KLIPSCH GROUP, INC.,<br><br>    *Defendants*. | C.A. No. 24-1411-GBW<br><br>JURY TRIAL DEMANDED |

**STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY, INCLUDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION ("ESI")**

  WHEREAS, the parties to the above-captioned action (the "Action"), Plaintiff Harman International Industries, Inc. ("Plaintiff") and Defendants Voxx International Corporation and Klipsch Group, Inc. (together, "Defendants") (collectively, the "Parties" or either individually, a "Party") have, through counsel, in accordance with Paragraph 1 of the Scheduling Order (D.I. 19), and pursuant to Federal Rule of Civil Procedure 26(f), conferred and stipulated to entry of this Stipulation and [Proposed] Order Regarding the Discovery of Electronically Stored Information (the "Order"); and

  WHEREAS, the Parties will seek discovery of electronically stored information ("ESI") pursuant to Rule 26 of the Federal Rules of Civil Procedure and each possess ESI that may be produced in this proceeding; and

  WHEREAS, the Parties intend for this Order to apply to the collection, processing, and production of all ESI, including all manner of information stored in any electronic format, and to assist the Parties in resolving any disputes regarding the discovery of ESI without Court intervention; and

  WHEREAS, the Parties have established good cause for entry of this Order;

NOW THEREFORE, pursuant to Federal Rule of Civil Procedure 26, upon the stipulation and consent of the Parties and for good cause shown, the Court hereby ORDERS as follows.

**1.      GENERAL PROVISIONS.**

a.      **Non-ESI.** The Parties agree that, unless specified herein, nothing in this Order changes a Party's obligations under the Federal Rules of Civil Procedure to search for, collect, and produce non-ESI information. Such non-ESI information, including but not limited to paper, will be produced in electronic form, rendered text searchable, e.g., via OCR, by the Producing Party except where impracticable (e.g., handwritten notes), and include any file folders and/or labels.

b.      **Proportionality.** Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify, and produce relevant information and adhere to the proportionality standard as set forth in Fed. R. Civ. P. 26(b)(1).[1] This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

c.      **Preservation of Discoverable Information.** A Party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody, or control.

i.      Absent a showing of good cause by the Requesting Party, the Parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the Parties shall preserve the non-duplicative discoverable information currently in their possession, custody, or control.

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

    ii. Absent a showing of good cause by the Requesting Party, the categories of ESI identified in **Schedule A** attached hereto need not be preserved.

  d. **Cooperation.** Parties are expected to reach agreements cooperatively on how to conduct discovery under Fed. R. Civ. P. 26-36. The Parties shall promptly meet and confer and negotiate in good faith to resolve any disputes that arise under this Order.

  e. **Dispute.** To the extent there is a dispute between the Parties under any of the provisions of this ESI Order that cannot be resolved through their meet and confer efforts, the Parties may bring the dispute to the Court in accordance with Paragraph 4(g) of the Scheduling Order (D.I. 19).

2. **NOTICE.**

 The Parties shall make a good faith effort to identify in a timely fashion any issues that the Parties become aware of relating to:

  a. Any ESI (by type, date, custodian, electronic system, or other criteria) that a Party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i).

  b. Third-party discovery under Fed. R. Civ. P. 45 and otherwise, including the timing and sequencing of such discovery.

  c. Production of information subject to privacy protections, including information that may need to be produced from outside of the United States and subject to foreign laws.

3. **SCOPE OF DISCOVERY.**

  a. The Parties shall serve initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) in accordance with Paragraph 1 of the Scheduling Order (D.I. 19) on or before November 28, 2025.

  b. The Parties shall serve initial disclosures pursuant to Paragraph 3 of the D. Del. Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI") on or before December 17, 2025.

  c. The Parties shall provide their initial contentions in accordance with Paragraph 3 of the Scheduling Order (D.I. 19).[2]

  d. Absent a showing of good cause, follow-up discovery shall be limited to a term of 6 years before the filing of the Complaint, except that discovery related to asserted prior art, asserted objective indicia of non-obviousness, or the conception and reduction to practice of the inventions claimed in any patent-in-suit shall not be so limited.

  e. **Limitation on RFPs.** Each side will be limited to 50 requests for production ("RFPs") per side. The Parties will not make subpart objections where a RFP requests documents related to more than one Asserted Patent. This limit does not include "email RFPs," as defined and discussed in Paragraph 4(c) below.

**4. SPECIFIC E-DISCOVERY ISSUES.**

  a. **On-Site Inspection of Source Code.** The Parties anticipate tendering and/or receiving requests to inspect source code relating to the illuminated displays of the products at issue, and will discuss in good faith an appropriate source code inspection protocol at that time.

  b. **Search Methodology.** If the Producing Party elects to use search terms to locate potentially responsive ESI, it shall disclose the search terms to the Requesting Party. Absent a showing of good cause, the Requesting Party may request no more than 10 additional search terms. The Parties will negotiate search term and/or search string revisions in good faith and based upon hit counts. If a dispute arises regarding the search terms to be used, the Parties will meet and

---

[2] As these disclosures are "initial," each Party shall be permitted to supplement.

confer in good faith to resolve the dispute. Focused terms, rather than over-broad terms, shall be employed.

  c. **E-Mail Discovery.** General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (such as text messages, voicemails, or instant messages (collectively, "e-mail")). To obtain e-mail, Parties must propound specific e-mail production requests ("email RFPs") that shall be limited to discrete issues. Each Party shall serve a maximum of 10 email RFPs. The search methodology of Paragraph 4(b) above shall apply to email RFPs.

  d. **Format.** ESI and non-ESI shall be produced to the Requesting Party as text searchable image files (*e.g.*, PDF or TIFF). When a text-searchable image file is produced, the Producing Party must preserve the integrity of the underlying ESI, i.*e.,* the original formatting, the metadata (as noted below) and, where applicable, the revision history. The Parties shall produce their information in the following format: single page TIFF images and associated multi-page text files containing extracted text or OCR with Concordance and Opticon load files containing all requisite information including relevant metadata.

  e. **Native Files.** Files not easily converted to image format with pagination, such as Excel, Access files or audio, video, or other multimedia files, are to be produced as native files with image slipsheets.

  f. **Metadata Fields.** The Parties are only obligated to provide the following metadata for all ESI produced, to the extent such metadata exists: Custodian, File Path, Email Subject, Conversation Index, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Filename, Author, Date Created, Time Created, Date Modified, Time Modified, MD5 Hash, File

Size, File Extension, Control Number Begin, Control Number End, Attachment Range, Attachment Begin, and Attachment End (or the equivalent thereof).

    g.    **Redactions.** Redactions are governed by the Parties' Stipulated Protective Order, Paragraphs 5(d) (privilege); Paragraph 5(e) (personally-identifiable information ("PII")), and Paragraph 5(f) (no relevancy redactions). The Producing Party may redact from any TIFF image, metadata field, or native file information that (i) is protected from disclosure by applicable privilege or immunity; (ii) contains PII of any individual, including without limitation any individual's payment or other financial information, address, phone number or name; and/or is (iii) governed by applicable privacy law or regulation protecting PII.

    h.    **Deduplication**.

        i.    A Party is only required to produce a single copy of a responsive document. Parties may deduplicate stand-alone documents or entire document families vertically within each custodian or horizontally (also referred to as globally) across custodians. Documents are exact duplicates if they have matching MD5 or SHA-1 hash values.

        ii.    When comparing document families, if a parent document is an exact duplicate, but one or more attachments or embedded files are not exact duplicates, neither the attachments or embedded files nor the parent document will be deduplicated.

        iii.    To the extent emails are produced, attachments to emails shall not be eliminated from their parent emails. Where a stand-alone document is an exact duplicate of an email attachment, the email attachment must be produced and the stand-alone document may be deduplicated but the Producing Party is not required to do so.

      i.      **Processing Specifications.** A Producing Party shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to its production:

      i.      Tracked changes, author comments, hidden columns and hidden rows shall be turned "on" before production.

      ii.      Presenter notes will be made visible and Microsoft PowerPoint files shall be produced in notes view.

      iii.      Compressed Files. To the extent that the Party to whom a production is made cannot decompress a file that is the subject of a compression file type (i.e., .CAB, .GZ, .TAR, .Z, .ZIP), the Producing Party shall provide the contents of said file decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

**5.      RESERVATIONS OF RIGHTS.**

Nothing in this Stipulation and Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI. Nothing in this Stipulation and Order is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third Parties to object to a subpoena. Nothing herein shall be construed as limiting a Party's right to bring a dispute to the Court in accordance with Paragraph 4(g) of the Scheduling Order (D.I. 19).

**6.     MODIFICATION.**

This Stipulation and Order may be modified or expanded by written agreement of the Parties, or by the Court for good cause shown.

**SO ORDERED** this _____ day of _____, 2025.

_____
Hon. Gregory B. Williams, U.S.D.J.

**DLA PIPER LLP (US)**

/s/ *Stephanie E. O'Byrne*
Jeffrey T. Castellano (DE Bar No. 4837)
Stephanie E. O'Byrne (DE Bar No. 4446)
Matthew S. Middleton (DE Bar No. 6877)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
jeff.castellano@us.dlapiper.com
stephanie.obyrne@us.dlapiper.com
matthew.middleton@us.dlapiper.com

Matthew Satchwell
(admitted *Pro Hac Vice*)
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, IL, 60606
Telephone: (312) 368-2111
Facsimile: (312) 236-7516
matthew.satchwell@us.dlapiper.com

John McDermott (admitted *Pro Hac Vice*)
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, DC, 20004
Telephone: (202) 799-4461
Facsimile: (202) 799-5000
john.mcdermott@us.dlapiper.com

*Attorneys for Plaintiff Harman International Industries, Inc.*

**BAYARD, P.A.**

/s/ *Stephen B. Brauerman*
Stephen B. Brauerman (DE Bar No. 4952)
Ronald P. Golden (DE Bar No. 6254)
600 N. King Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Defendants VOXX International Corp. & Klipsch Group, Inc.*

## SCHEDULE A

1. Deleted, slack, fragmented, or other data only accessible by forensics.

2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line access data such as temporary internet files, history, cache, cookies, and the like.

4. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

5. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

6. Voice messages.

7. Instant messages that are not ordinarily printed or maintained in a first party or third-party server.

8. Electronic mail or pin-to-pin messages sent to or from mobile devices *(e.g.,* iPhone, Android, and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

9. Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

10. Logs of calls made from mobile devices.

11. Server, system, or network logs.

12. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data are not ordinarily preserved as part of a laboratory report.

13. Data remaining from systems no longer in use that are unintelligible on the systems in use.